Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Frank Gregory Casella (SBN 301494)
fcasella@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

David Rudich, Esq. (SBN 45868)
Law Offices of David Rudich
9255 Sunset Boulevard, Suite 920
Los Angeles, Ca 90069
(310) 550-8020 Telephone
(310) 859-8651 Facsimile
david@davidrudich.com

Attorneys for Plaintiffs
Benny Mardones and Robert Tepper

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNY MARDONES, an Individual; and ROBERT TEPPER, an Individual,<br><br>Plaintiffs,<br><br>v.<br><br>CYNDI LAUPER, an Individual; INDEPENDENT PRESENTERS NETWORK, a New York business entity, form unknown; CJ E&M CORP., a South Korean Corporation; JUST FOR LAUGHS THEATRICALS, LLC, a New York Limited Liability Company; JUJAMCYN THEATRES, LLC, a New | Case No.:<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br>**(2) BREACH OF FIDUCIARY DUTIES**<br>**(3) BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

1
COMPLAINT

York Limited Liability Corporation; SPIRIT TWO MUSIC, INC., a New York Corporation, and DOES 1 THROUGH 10,

Defendants.

Plaintiffs, Benny Mardones ("Mardones") and Robert Tepper ("Tepper"), by and through their undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## INTRODUCTION

Mardones and Tepper are well known musicians who collaborated to write the hit song "Into the Night," one of only ten records in history to have placed in the top 20 of the Billboard Hot 100 chart twice—it reached #11 in 1980 following its release and hit #20 nearly a decade later in 1989. This action is brought because the song "Pick You Up" from the Broadway Musical "Kinky Boots" includes substantially similar lyrics and music which appear to be an unauthorized copy/derivation of the main theme/hook of "Into the Night."

## PARTIES

1. At all times mentioned herein, Mardones was an individual residing in the state of California.

2. At all times mentioned herein, Tepper was an individual residing in the state of California.

3. At all relevant times, Defendant Cyndi Lauper ("Lauper") was an individual residing in the state of New York.

4. CJ E&M CORP. is a South Korean entertainment and media company operating in the United States through its US-based subsidiary CJ E&M America,

2
COMPLAINT

which has an ownership and/or financial interest in the Kinky Boots production and does business in California.

5. Plaintiffs are informed and believe and thereon allege that Defendant Independent Presenters Network ("IPN") is a consortium of 40 of leading Broadway presenters, theaters and performing arts centers, which bring Broadway productions to more than 110 cities throughout North America and has produced the Kinky Boots musical. IPN is believed to have its principal place of business located at 270 Lafayette Street, Suite 200, New York, New York 10012, which has an ownership and/or financial interest in the Kinky Boots Broadway production.

6. Plaintiffs are informed and believe and thereon allege that Defendant CJ Group USA, Inc. d/b/a/ CJ E&M ("CJ E&M") is a corporation organized and existing under the laws of the state of New York, with its principal place of business located 6324 Fort Hamilton Parkway, Brooklyn, New York 11219, and which has an ownership and/or financial interest in the Kinky Boots Broadway production.

7. Plaintiffs are informed and believe and thereon allege that Defendant Just For Laughs Theatricals, LLC ("Just For Laughs") is a New York limited liability company with its principal place of business located at 263 West 38th Street, 12 Floor, New York, New York 10018. Plaintiff is further informed and believes that Just for Laughs was involved in the production of Kinky Boots for Broadway, London, Australia, and for a North American tour which included Los Angeles.

8. Plaintiffs are informed and believe and thereon allege that Defendant Jujamcyn Theatres ("Jujamcyn") is a corporation organized and existing under the laws of the state of New York, with its principal place of business located at 246 West 44th Street New York, New York 10036.

9. Plaintiffs are informed and believe and thereon allege that Defendant Spirit Two Music, Inc. ("Spirit") is a New York Corporation with offices in California at 12711 Ventura Blvd, Suite 110, Studio City, CA 91606.

10. Plaintiffs are unaware of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sue defendant(s) under such fictitious names. Plaintiffs are informed and believe and based thereon allege that such fictitiously named defendants are responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages as herein alleged were proximately caused by the conduct of said defendants. Plaintiffs will seek to amend the complaint when the names and capacities of such fictitiously named defendants are ascertained. As alleged herein, the term "Plaintiffs" shall mean all named plaintiffs, and "Defendants" shall mean all named defendants and all fictitiously named defendants.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over each and every one of the Defendants. Venue in this Court is proper under 28 U.S.C. § 1391(c) and 1400(a) because one or more Defendants reside and/or carry on business here, and the wrongful acts of Defendants took place, in whole or in part, in this District.

12. This action arises under the Copyright Act of 1976, Title 17 U.S.C., § 101 *et seq*.

13. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 1338 (a) and (b).

## GENERAL FACTUAL ALLEGATIONS

14. Plaintiffs are the authors and copyright owners in the musical composition "Into the Night" ("Subject Composition"), which was composed in this District and first recorded and released in 1980.

15. On June 29, 1981, Plaintiffs registered the Subject Composition with the United States Copyright Office, receiving Registration Number PA 79-692.

16. Since its initial release and publication, "Into the Night" has become a frequently performed major hit. It has achieved the distinction of being one of only

4
COMPLAINT

ten songs to place in the top 20 of the *Billboard* Top 100 Chart twice with nearly a decade between those chart appearances. It has been professionally recorded and widely and publicly performed in this District and throughout the United States by means of records, radio, streaming channels, and other media. Recordings of and sheet music for the Subject Composition have also been widely sold throughout the United States, including sales in this District.

17. Defendants have had repeated and continuing access to "Into the Night" in various ways including aforementioned public performances, records, streaming services, and sheet music. Without limiting the access and knowledge of other Defendants, Plaintiffs are informed and believe and thereon allege that, at all relevant times, Lauper and her agents were specifically aware of "Into the Night." Indeed, Plaintiffs are informed and believe and thereon alleges that one of the musicians who toured with Mardones and is intimately familiar with "Into the Night" is now a touring musician with Lauper.

18. Plaintiffs discovered that since October 2013 Defendants have continuously and repeatedly infringed, and are presently infringing, Plaintiff's copyright in "Into the Night," in a song publically performed in the highly successful and award winning musical entitled "Kinky Boots.".

19. Defendants copied the principle "Pick You Up" theme of "Into the Night" virtually note for note and have made that copied theme the principle theme of a song purportedly written by Lauper entitled "Raise You Up" ("Infringing Work"), to the point that the principle themes of the two works are strikingly similar. Both the notes and the words surrounding the "raise you up" refrain, sung repeatedly in the Infringing Work, have been copied from the notes and words "pick you up" from "Into the Night." The similarities of the two works include:

20. A "crucial musical climactic moment" the Infringing Work is not only similar but identical to the Subject Composition. See example 1 below:

**EXAMPLE #1 (Infringing Work: top row, Subject Composition: middle row)**



21. The "hooks" in the Subject Composition ("pick you up") and the Infringing Work ("raise you up") are identical in form, harmonic progression, and rhythm. See example 2.

**EXAMPLE #2 (Infringing Work: top row, Subject Composition: middle row)**



22. The Infringing Work copies the iconic and crucial phrase "…you up" both in word and placement in the work. The Infringing Work sets the lyrics to the exact same progression of tones and rhythm as the Subject Composition. See example 2.

23. The Infringing Work uses similar lyrical phrases and themes as those in the Subject Composition immediately preceding its copying of the "…you up" phrase. See example 3 and 4.

### EXAMPLE #3: LYRICS IN SUBJECT COMPOSITION

*If I could fly*

*I'd pick you up*

*I'd take you into the night*

*And show you a love*

*Like you've never seen*

### EXAMPLE #4: LYRICS IN INFRINGING WORK

*If you hit the dust*

*Let me raise you up*

*When your bubble busts*

*Let me raise you up*

*If your glitter rusts*

*Let me raise you up*

24. The Infringing Work uses phrases and musical progression identical to those in the Subject Composition immediately following its copying of the "hook." See example 2-4.

7
COMPLAINT

**EXAMPLE #4 (Infringing Work: top row, Subject Composition: middle row)**



25. Identical harmony, harmonic and rhythm progression, and emphasis of chords in the guitar and keyboard accompaniments to the Subject Composition and the Infringing Work. In both songs the music progresses from a "dotted syncopated rhythm beginning with the chord built on scale step 4" through step 5 before "harmonically resolving" in a rest. See example 5.

**EXAMPLE #5 (Infringing Work: top, Subject Composition: bottom)**



26. The Infringing Work, and particularly its principle theme copied from "Into the Night," is the the only song performed twice in Kinky Boots, including as the finale and major "hit" song in the production. A New York Times review of "Kinky Boots", critical to the success of any Broadway show, singled out the Infringing Work for particular praise as having, by itself, "sent audiences dancing out of the theater." The unique audience reaction and the extraordinarily favorable review have attracted vast number of additional patrons to the production and resulted in substantial added revenue to Defendants.

27. Defendants' cast recording album of the music from "Kinky Boots" includes the Infringing Work and thus further disseminates and enables Defendants to profit from the principle themes that Defendants copied from "Into the Night." That album has been widely and successfully sold in this District and elsewhere in the United States and the rest of the world. The Infringing Work has been repeatedly played on the radio, streaming services, and other media in this District and elsewhere in the United States and the rest of the world.

28. Since 2013 Kinky Boots has been performed continuously on Broadway, in London, Australia, and all across North America by road companies associated with and authorized by Defendants, including public performances in this District. Such performances of the Infringing Work have occurred continuously since the inception of the musical, and will continue unless enjoined by this Court.

29. In May 1999 Mardones entered into an Administration Agreement ("Agreement") with Spirit whereby Spirit was granted the "sole and exclusive rights of administration" in musical compositions written and/or composed by Mardones, including but not limited to "Into the Night."

30. Under the Agreement, Spirit was further granted the right and ability "to enforce, protect and defend all rights in and to the Compositions and, to the extent applicable, the copyrights thereof."

31. On June 18, 2015 Plaintiffs, through their attorney, served a notice on Spirit that it had materially breached the Agreement and its fiduciary duties to Plaintiffs by not only licensing and profiting from the infringing "Raise You Up," but by falsely and fraudulently claiming that "Raise You Up" is entirely dissimilar to "Into the Night" despite the two works having an identical melodic hook when transposed into the same key and having virtually identical lyrics of their respective melodic hooks. Plaintiffs provided a supporting musicological analysis of the renowned music expert Robert Tomaro, PhD and insisted that Spirit honor its contractual and fiduciary obligations. Spirit refused, in response correspondence of July 2, 2015, reiterating its purported belief that "Raise You Up" does not infringe "Into the Night."

32. Despite transferring and licensing various rights in "Into the Night" to Spirit, Plaintiffs retained substantial beneficial interest in the composition "Into the Night," including but not limited to ownership of the copyright, interests in the right to receive royalties on the exploitation of the composition, say over significant decisions regarding the compositions, approval/ disapproval rights relating to litigation and handling of claims, and reservation of all rights not granted to Spirit under the agreement.

33. Plaintiff's retention of substantial beneficial interest in "Into the Night" confers upon them standing to sue for infringement, as does the refusal of Spirit to pursue this action.

## FIRST CLAIM FOR RELIEF

(For Direct Copyright Infringement – Against Defendants
Lauper, IPN, CJE&M, Just For Laughs and Jujamcyn)

34. Plaintiffs repeat, re-allege, and incorporate herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

35. Plaintiffs own the copyright in the musical composition "Into the Night," which was registered with the United States Copyright Office before the occurrence of the infringement claimed herein.

36. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work of "Into the Night" infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

37. Defendants did not seek or receive permission to copy, take, sample, or interpolate any portion of "Into the Night" when creating "Raise You Up." Yet, Defendants exploited a substantial and material portion of "Into the Night" in composing "Raise You Up."

38. Defendants' conduct has at all times been, and continues to be, knowing, willful, and with complete disregard to Plaintiffs' rights.

39. As a proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

40. The infringing "Raise You Up" song copies quantitatively and qualitatively distinct, important, and recognizable portions of "Into the Night," as discussed herein.

41. From the date of creation of "Raise You Up," Defendants, and each, have infringed Plaintiffs' copyright interest in "Into the Night" by, without limitation: (a) authorizing the live performance, reproduction, distribution and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing physical or digital or electronic copies of "Raise You Up" through various physical and online sources; (b) performing "Raise You Up" at live productions and other performances of "Kinky Boots," (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "Into the Night" in and as part of the infringing work "Raise You Up," packaged in a variety of configurations and digital

downloads, mixes and versions, and performed in a variety of ways including, but not limited to, audio and video.

42. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, had access to the Subject Composition, including, without limitation, through (a) listening to the recording via Plaintiffs' public performances or recordings, (b) streaming the Subject Composition online, (c) listening to the Subject Composition through a third party, (d) viewing the sheet music of the Subject Composition. Plaintiffs further allege that the identical nature of the copying establishes access.

43. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, performed and distributed songs and recordings thereof that were unauthorized copies of the Subject Composition, and exploited said composition online, in advertising, and in productions.

44. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, infringed Plaintiffs' copyrights by creating infringing derivative works from the Subject Works and by performing and publishing the infringing work to the public, including without limitation, through its live performances, YouTube channels, or elsewhere.

45. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, infringed Plaintiffs' rights by copying the Subject Composition without Plaintiffs' authorization or consent.

46. Due to Defendants', and each of their, acts of infringement, Plaintiffs have suffered general and special damages in an amount to be established at trial.

47. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiffs' rights in the Subject Composition. As such, Plaintiffs are entitled to disgorgement of Defendants'

profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Composition in an amount to be established at trial.

48. Plaintiffs are entitled to elect actual damages, including the substantial profits of Defendants, or in the alternative statutory damages pursuant to 17 U.S.C. § 504(c), in an amount to be proven at trial.

49. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

50. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance or other use or exploitation of "Into the Night," including the infringing song "Raise You Up."

## SECOND CLAIM FOR RELIEF

(For Breach of Fiduciary Duties – Against Spirit)

51. Plaintiffs repeat, re-allege, and incorporate herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

52. At all relevant times, Spirit created, accepted, and was obligated to act in a fiduciary relationship with and for the benefit of Plaintiffs. This fiduciary relationship was based on trust and confidence, as well as the express contractual obligations alleged herein, and it required Spirit to act in the best interests of Plaintiffs at all times.

53. Also by virtue of this special relationship that existed between Spirit and Plaintiffs, Plaintiffs had confidence in the fidelity and integrity of Spirit and entrusted Spirit with information and portions of their financial and legal affairs, thereby creating a confidential relationship which existed at all times relevant to this action,

such that Spirit owed to Plaintiffs a fiduciary duty to put the interests of Plaintiff before their own.

54. Upon learning of the infringement claims at issue in this case, Plaintiffs reached out to Spirit as the administrator of "Into the Night" to advise it of the plagiarism of a substantial portion of "Into the Night" and to request that Spirit honor its contractual and fiduciary obligations with respect to that claim. Specifically, Mardones called and spoke to Spirit founder and President Mark Fried to make him aware of the claims against Lauper, et. al.

55. Plaintiffs are informed and believe, and thereon allege, that Spirit also represents Lauper, although at no point did Spirit disclose this conflict to Plaintiffs.

56. In June of 2015, after independently learning of Spirit's relationship with Defendants and conflict of interests, Plaintiffs' counsel documenter their claims in writing to Spirit with a supporting musicologist report and demanded that Spirit honor its contractual and fiduciary obligations to Plaintiffs with respect to the claims asserted herein.

57. Spirit has failed and refused to take action on the infringement claim asserted herein, and has instead made it abundantly clear that its priorities and allegiances lie with Lauper and the other defendants. Spirit's willful breach and failure to act underscores a simple fact: Spirit has put its pecuniary interest in continuing to reap the financial benefits from the exploitation of both "into the Night" and "Raise You Up" above its obligations to protect Plaintiffs' copyrights. Plaintiff believes that Spirit's decision has been motivated by the fact that Mardones suffers from Parkinson's Disease and has resultantly had to significantly reduce his touring (and the attendant promotion of "Into the Night") while Lauper's Kinky Boots with its main anthem "Lift You Up" is an ongoing commercial success that has won best musical awards including the Tony, the Grammy, and London's Oliver Award.

58. Moreover, Spirit has made an intentional decision to align itself with Lauper, affirmatively stating to Mardones that "Raise You Up" does not infringe on "Into the Night." At a minimum Spirit could have remained neutral, but it willfully chose not to do so despite having voluntarily accepted the trust and confidence of Plaintiffs, and the express fiduciary duties to which they agreed, Spirit breached its fiduciary duties by *inter alia* (1) failing to identify and raise claims based on the copyright for "Into the Night" which it was obligated to protect, (2) advising Plaintiff that the claim was very close but then discouraging Plaintiffs from pursuing the case, (3) refusing to bring the claims asserted herein, even when advised that a renowned musicologist believed the claim to be viable, (4) failing to advise Plaintiffs of its conflict of interest in this matter given Spirit's representation of Lauper, (5) failing to remain neutral when faced with its conflict interest, instead giving strong biased support to Lauper and the other Defendants to the detriment of Plaintiff, and (6) refusing to cooperate in Plaintiff's efforts to avoid further dispute and preempt unnecessary and costly litigation concerning standing by confirming Plaintiffs' right to bring this action with a simple assignment of such right.

59. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and sustained damages in an amount not yet ascertained, but to be proven at trial. To the extent that the Agreement purports to contain an exculpatory clause, which purports to release Spirit from this unlawful conduct, Plaintiffs allege that such a clause is unenforceable pursuant to Civil Code Sec. 1668 and other applicable laws.

60. Spirit is guilty of malice, fraud or oppression, such that Plaintiffs should recover, in addition to actual damages, punitive damages to make an example of and punish and deter similar conduct.

### THIRD CLAIM FOR RELIEF

(For Breach of Contract – Against Spirit)

61. Plaintiffs repeat, re-allege, and incorporate herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

62. Spirit expressly agreed with Plaintiffs that it would, among other things, act as the attorney-in-fact and initiate litigation against infringers of any of the compositions subject to the Agreement, including "Into the Night." At the time the parties entered into the Agreement they were legally capable of contracting—there was mutual consent, a lawful objective and sufficient consideration.

63. Plaintiffs have performed all obligations required by the Agreement, and Spirit has accepted and benefitted from Plaintiffs' performance under the Agreement.

64. Spirit has materially breached the terms of the Agreement by, among other things, refusing and failing to bring legal action against Lauper and the other Defendants named herein, and by acting to the detriment of the Plaintiffs. The breach is material.

65. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and sustained damages in an amount not yet ascertained, but to be proven at trial. To the extent that the Agreement purports to contain an exculpatory clause, which purports to release Spirit from this unlawful conduct, Plaintiffs allege that such a clause is unenforceable pursuant to Civil Code Sec. 1668 and other applicable laws.

66. Moreover, Plaintiff alleges that the Administration Agreement was obtained by Spirit through mistake and fraud, as alleged herein, since Plaintiffs did not understand that Spirit would not protect its interests, including bringing legal action if such action would conflict with other client interests that Spirit deemed to be more important or currently valuable than Spirit's legal and contractual obligations to Plaintiffs.

67. Spirit affirmatively and fraudulently concealed from Plaintiffs that it would not carry out its contractual obligations to Plaintiffs in the event of a conflict

of interests with other Spirit writers, notwithstanding the adverse effect and financial harm Plaintiffs. Spirit had a duty to so advise Plaintiffs in light of the fiduciary duties established but failed to so advise Plaintiffs.

68. Upon information and belief Spirit represents a substantial portion of the music publishing market throughout the world. Accordingly, there is a strong likelihood that conflicts of interest, such as the one at issue in the present case, will arise again between Spirit and Plaintiffs. Based on blatant and egregious breach of Spirit's fiduciary duty and covenant of good faith and fair dealing, Spirit has proven that it cannot be trusted to remain neutral and impartial, and that it is unworthy of the level of trust and unable to meet the level of professional conduct which is required of a copyright administrator charged with protecting Plaintiffs' important interests in their copyrighted works.

69. By Spirit materially breaching the terms of the Agreement, as set forth above, Spirit has rendered an ongoing relationship unworkable. Plaintiffs therefore serve notice through this pleading of their demand for rescissionary damages on the grounds of fraudulent misrepresentations, deceit, mistake, material breach, and breach of fiduciary duties by Spirit as alleged herein.

70. Plaintiffs hereby demand restitution from Spirit in an amount that will restore them to a position they would have been in had Spirit not engaged in the willful, intentional, and purposeful conduct alleged herein.

71. Plaintiffs also seek rescission of the Agreement, and disgorgement of profits, based on Spirit's breaches of various contractual and fiduciary duties owed to them. Plaintiffs should not be compelled to remain in this contractual relationship, the term of which continues for many years, in light of the fact that Spirit has actively and affirmatively worked against the rights and interests of Plaintiffs, despite its legal and contractual duties to protect those very rights and interests. Spirit has shown that it will not and cannot be trusted to perform its contractual obligations and duty to

Plaintiffs in accordance with and as intended by the Agreement, and has no intention of doing so, particularly when confronted with conflicts of interest that are perceived to adversely affect its more significant revenue streams and other Spirit interests.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for judgment against all Defendants, and each of them individually, as follows:

1. A declaration that Defendants have infringed Plaintiffs' copyrighted musical work in violation of the Copyright Act;
2. A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;
3. A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act;
4. For either statutory damages or the actual damages sustained by Plaintiffs;
5. For special and compensatory damages in an amount according to proof in excess of the jurisdictional limit of this court;
6. For an accounting;
7. For punitive damages;
8. For injunctive relief from any and all present and/or future exploitation;
9. For restitutionary damages;
10. For rescission of the Agreement with Spirit;
11. For prejudgment interest;
12. For attorney's fees, where applicable, interest, and costs of suit; and

13. For such other and further relief as to this Court seems just and proper.

Plaintiffs demand a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

                                Respectfully submitted,

Dated: August 30, 2017         By: */s/ Stephen M. Doniger*
                                        Stephen M. Doniger, Esq.
                                        DONIGER / BURROUGHS
                                        Attorneys for Plaintiffs